1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                       FOR THE DISTRICT OF ARIZONA
8
9   Jonathan Walton, et al.,              )   No. CV-05-3027-PHX-ROS
                                          )
10              Plaintiffs,               )   **ORDER**
                                          )
11  vs.                                   )
                                          )
12                                        )
    Bridgestone/Firestone, Inc. et al.,   )
13                                        )
                Defendants.               )
14                                        )
                                          )
15  _____  )
16
17          Pending are twenty-three motions in limine.  At least three of Defendants' motions
18  exceeded the page limits for responsive briefing required by Local Rule of Civil Procedure
19  7.2(e).  Though frequently permitted, a specific request to exceed the page limits is always
20  required.  Defendants' failure will be excused this time.

21  **Motion In Limine Re: Affidavit of Robert C. Ochs (Doc. 261)**

22          **Sears Defendant's motion is granted in part and denied in part.**

23          Mr. Ochs' disputed expert opinion affidavit was already excluded, pursuant to the
24  Court's September 4, 2008 Order, because of Plaintiffs' failure to timely submit the affidavit
25  in accordance with Federal Rule of Civil Procedure 26(a)(2)(B)(i) (Doc. 258 at 3-4).  Thus,
26  any testimony from Mr. Ochs concerning his conclusion that Defendant Sears repaired and
27  installed Plaintiff Jonathan Walton's (Walton or Plaintiff) accident tire, will also be excluded.
28

1   However, Mr. Ochs will not be precluded from testifying to underlying facts and opinions

2   supportive of that expert conclusion.

3         Sears' motion seeks to exclude more than the expert opinion contained in Ochs'

4   affidavit: "any opinion and/or evidence that the accident tire was the tire repaired by Sears

5   in March 2002" (Doc. 261 at 1-2).  It asks to exclude any evidence or opinion supporting an

6   inference that Defendant Sears repaired and installed the accident tire in March 2002.  Yet

7   Sears does not allege nor do Plaintiffs admit a failure to timely disclose facts or opinions in

8   Mr. Ochs' testimony, other than those contained in the affidavit (i.e. the expert conclusion

9   concerning who repaired and replaced Walton's accident tire).  Without seeing the specific

10  terms of Plaintiffs' disclosure vis-a-vis Mr. Ochs, the Court will not exclude for failure to

11  timely disclose any element of Mr. Ochs' testimony *except* the affidavit and its expert

12  conclusion, which Plaintiffs admit were untimely.  See Fed. R. Civ. P. 37(c)(1) ("If a party

13  fails to provide information ... as required by Rule 26(a) ..., the party is not allowed to use

14  *that information ...*") (emphasis added).

15
16  **Motion In Limine To Exclude Portions of Investigating Law Enforcement Officers' Opinion Testimony and Report (Doc. 263)**

17        **Plaintiffs' motion is denied.**

18        Plaintiffs seek to exclude statements from police officers who investigated Plaintiff's

19  accident concerning whether (1) Plaintiff was wearing a seatbelt, (2) Plaintiff should have

20  been able to control his vehicle, and (3) motorists in general should be able to control their

21  vehicle after a tire tread belt separation.  Defendants concede points (2) and (3).  Plaintiffs'

22  motion to exclude item (1) is denied, assuming foundation can be laid.  According to their

23  report, the officers saw that Plaintiff had been ejected from his vehicle; they later examined

24  his seatbelt, and concluded, from their experience as police officers who routinely investigate

25  traffic accidents, that Plaintiff had not been wearing a seatbelt during the accident (Docs. 263

26  Ex. 1 at 3-4; 332 Ex. A).  In this way, the officers' testimony is (a) not based on scientific,

27  technical, or other specialized knowledge within the meaning of Federal Rule of Evidence

28  702, (b) is rationally based on their perceptions, and (c) is helpful to the jury with regard to

1   the question of Plaintiff's negligence.  See Fed. R. Evid. 701; U.S. v. VonWillie, 59 F.3d
2   922, 929 (9th Cir. 1995) (allowing law enforcement officer to give lay opinion testimony
3   concerning the "nexus between drug trafficking and the possession of weapons" based on the
4   officer's perceptions during a search and his prior narcotics investigation experience).  See
5   also Fed. R. Evid. 601-02.

6          Also, the evidence is not cumulative.  And, even if, as Plaintiffs contend, the officers
7   have no memory of the investigation independent from their report, this issue goes to the
8   weight, not admissibility, of the officers' testimony, assuming foundation can be laid and
9   their statements otherwise avoid hearsay preclusion.  Lastly, the Federal Rules of Evidence,
10  not Arizona law, govern all evidentiary matters in these proceedings.  See Gibbs v. State
11  Farm Mut. Ins. Co, 544 F.2d 423, 428 n.2 (9th Cir. 1976) ("In diversity cases, we apply the
12  Federal Rules of Evidence when, as here, they cover the points in dispute.").

13
    **Motion In Limine Re Testimony of "Human Factors" Expert Thomas Black (Doc.
14  265)**
         **Plaintiff's Motion is granted in part and denied in part.**
15
16         Although Plaintiffs do not cite the Rule of Evidence relied upon, Plaintiffs appear to
    be challenging, pursuant to Rule 702, the "human factors" testimony of Dr. Black.
17
18         First, Plaintiffs challenge the foundation for Dr. Black's various statements
    concerning Walton's seatbelt use during the accident (Doc. 265 at 5).  Dr. Black's
19
    assumption that Plaintiff was not wearing a seatbelt during the accident is proper.  Dr. Black
20
    may rely on admissible evidence, such as the investigating officers' report discussed above
21
    (assuming it is admitted), to serve as  proper foundation on which to build his expert opinion
22
    under Rule 702.  However, Dr. Black provides neither sufficient facts nor data, as required
23
    by Rule 702, to support his opinion that Plaintiff was ejected from his automobile during the
24
    accident *because of* his failure to use a seatbelt.  Defendants are permitted to provide these
25
    facts or data, without which Dr. Black will be precluded from testifying on this matter.  Dr.
26
    Black's statements and opinions concerning the safety value of seatbelt usage and additional
27

28

1    risk assumed by drivers who fail to use seatbelts will be excluded, as these statements are

2    obvious and as such not helpful to the jury as required by Rule 702.

3          Further, Dr. Black's statements concerning the average driver's ability to maintain

4    control of his vehicle during a tire disablement (Doc. 265 at 6), the Plaintiff's failure to

5    properly steer his vehicle during the accident (Doc. 265 at 7-8), and any correlation between

6    cell phone usage and automobile accidents (Doc. 265 at 9) will be excluded, unless

7    Defendants specifically demonstrate the reliable sources upon which Dr. Black based his

8    conclusions on.  Dr. Black's summary listing of data sources, journal articles, and other

9    literature has been are presently insufficient.  See Fed. R. Evid. 104, 702.  Dr. Black's

10   opinions must be linked with specific data and reliable methods as required by Rule 702.

11   Defendants shall submit this requested material on Tuesday, January 20, 2009.

12

13   **Motion In Limine Re Argument By Sears Concerning Absence of Record (Doc. 266)**

      **Plaintiffs' motion is denied as moot.**

14

15         Sears admits that, after selling tires to Plaintiff Jonathan Walton in 2000,  it repaired

16   tires mounted on Plaintiff's car at least twice, once on May 12, 2001 and again on March 2,

17   2002  (Doc. 396).  Given this admission, they will not argue that "no service work was ever

18   performed on the Walton vehicle other than on November 4, 2000 and March 2, 2002" (Doc.

19   266 at 1).

20

21   **Motion In Limine Re Argument Or Evidence That a Non-Party Is At Fault  (Doc. 267)**

      **Plaintiffs' motion is granted.**

22

23         Defendants are precluded from arguing non-party liability or fault because of failure

24   to comply with Arizona Rule of Civil Procedure 26(b)(5).  However, Defendants will not be

25   precluded from framing arguments in terms of causation as they relate to the non-parties.  See

26   Wester v. Crown Controls Corp., 974 F. Supp. 1284, 1286 (D. Ariz. 1996) (holding Rule

27   26(b)(5) is applicable in federal court); Rosner v. Denim & Diamonds, 937 P.2d 353, 354-55

28   (Ariz. Ct. App. 1996).  Arizona Revised Statute § 12-2506, the statutory basis for Rule

26(b)(5), only discusses liability and fault, not causation.  Hence, Defendants may argue that they did not cause Plaintiffs' injuries, according to the definition of causation elaborated in the parties' jury instructions, but cannot argue they are not at fault as a consequence of non-parties.  However, before Defendants attempt this course, notice shall be given to Plaintiffs in writing outlining its nature if this has not already been done.

**Motion In Limine Re Income Taxes As Affecting Proper Measure of Damages  (Doc. 268)**

      **Plaintiffs' motion is denied.**

      Plaintiffs are correct that <u>Seely</u> states: "gross pay and not net or 'take home' pay is the proper basis for computing loss of future earnings, and that evidence of income taxes or deductions should not be allowed for the purpose of reducing the amount of damages." <u>Seely v. McEvers</u>, 564 P.2d 394, 397 (Ariz. Ct. App. 1977).  Yet, Defendants are also correct that the policy of <u>Seely</u> is based on the fact that future income tax rates are difficult to predict and render any calculation of future tax burden too remote to be useful, a policy which suggests lost earnings calculations may incorporate income tax reductions if the income tax has been established for the earnings period in-question. Defendants' reading of <u>Seely</u> is persuasive. Defendants may cross examine Plaintiffs' economics expert(s) concerning application of income taxes to Plaintiff Jonathan Walton's putative earnings for any period in which Plaintiff's income tax rate has been established.

**Motion In Limine Re Collateral Sources (Doc. 269)**

      **Plaintiffs' motion is denied as moot.**  Defendants have agreed not to broach this topic unless Plaintiffs open the door.

**Motion In Limine Re Cross Exam of Robert Ochs On Irrelevant Subjects (Doc. 270)**

      **Plaintiffs' motion is granted in part and denied in part.**

      Mr. Ochs' practice of wearing or not wearing a seatbelt is irrelevant and will not be a subject of cross examination.  But Defendants may cross examine Mr. Ochs on his past statements concerning the relationship between tire failure and automobile accidents if

1    Defendants' lay proper foundation for the previous statements.  Defendants may also cross
2    examine Mr. Ochs on his experience testing vehicles while employed at Michelin, but *only*
3    *if* Plaintiffs raise the topic during direct examination.  Defendants' cross examination
4    concerning the existence of a nail in one of Walton's non-accident tires will be similarly
5    limited and such questioning will be allowed *only if* Mr. Ochs testifies to a defect in one of
6    Walton's non-accident tires.  Lastly, questions concerning other courts' determinations of
7    the admissibility of Mr. Ochs' expert testimony will not be permitted on cross examination.
8
9    **Omnibus Motion In Limine (Doc. 272)**
10           **Plaintiffs' motion is granted in part and denied in part.**
11           Plaintiffs seek to prevent Defendants or Defendants' witnesses from directly or
12   indirectly addressing the following topics without obtaining permission from the Court at
13   sidebar: (1) any relationship between litigation and insurance rates; (2) fairness of product
14   liability law to manufacturers or distributors; (3) suggestion that damages awards drive up
15   the price of products, put manufacturers out of business, and cause job loss; (4)
16   circumstances under which Plaintiffs employed their attorneys; and (5) the status of
17   Plaintiff's accident tire model ("Dueler") as "popular" or a "best seller" among consumers.
18   Defendants concede that neither they nor their witnesses will discuss topics (1), (2) and (4).
19   However, Defendants maintain they should be allowed to address the economic impact of
20   litigation damages awards on their business if Plaintiffs open the door by arguing that cost
21   considerations motivated Defendants to act negligently.  The Court agrees.  Defendants will
22   also be allowed to present evidence of the Dueler's popularity and sales, but *only if* they lay
23   the proper foundation establishing a sufficient relationship between popularly or sales and
24   product reliability or safety.   Furthermore, such evidence must not take the form of
25   inadmissible hearsay.
26
27   **Motion In Limine To Preclude Evidence or Testimony of Compliance With Federal**
28   **Motor Vehicle Safety Standards (Doc. 278)**

1    **Plaintiffs' motion is granted.**

2    For a federal agency's consumer product safety standards to be admissible evidence,

3    the standards must show relevancy, materiality, trustworthiness, and necessity and not be

4    unduly prejudicial.  See Fed. R. Evid. 402-03.  Defendants have not met this burden, failing

5    first to provide the Court with a copy of the standards that they wish to offer.  Defendants

6    cite an opinion and argue that Arizona products liability law expressly allows industry

7    standards to be admitted as relevant, but not conclusive, evidence of the unreasonable

8    dangerousness of a product in a design-defect products liability action.  See Hohlenkamp v.

9    Rheem Mfg. Co.,655 P.2d 32 (Ariz. Ct. App. 1982).  This case is distinguishable, as its

10   holding specifically applies to industry standards and does not address government standards,

11   which are generally more detailed, thorough and reliable.  See Id. at 37 ("These codes were

12   formulated by groups of experts in the conveyor designing and manufacturing field, and were

13   approved by many organizations. They are likely to be more probative than a single learned

14   treatise or an expert opinion, as they represent the consensus of an entire industry.") (citing

15   Union Supply Co. v. Pust, 583 P.2d 276, 286-87 (Colo. 1978)).  Thus, Defendants have not

16   shown the relevance of their proposed submission.

17   **Motion In Limine Re Opinions In Records Without Witness Qualification (Doc. 279)**

18

19   **Plaintiffs' motion is denied in part and is stayed on the remaining issues until**

20   **Defendants further respond.**

21   Defendants make a valid argument that the disputed Community Transition records,

22   and opinions contained therein, may qualify as "opinions, or diagnoses, made at or near the

23   time by, or from information transmitted by, a person with knowledge ... kept in the course

24   of a regularly conducted business activity."  Fed. R. Evid. 803(6).  However, Defendants

25   have not met the burden of establishing that the opinions satisfy all of the elements of Federal

26   Rule of Evidence 803(6).  Nor have Defendants demonstrated that the opinions' "source of

27   information or the method or circumstances of preparation" does not "indicate [a] lack of

28

1  trustworthiness," as required by the rule.  Id.  If Defendants fail to make this showing,

2  Defendants may still proffer the records, for impeachment of Plaintiffs' expert witnesses.

3  Defendants shall respond by Tuesday, January 20, 2009.

4

5  **Motion In Limine To Exclude Any Reference To the Decatur PPR/C-95 Meeting of July 18, 2000, etc. (Doc. 283)**

6

7        **Plaintiffs' motion is granted in part and denied in part.**

8        Although Plaintiffs seek to exclude "the alleged fact that the Firestone Technical

9  Center conducted testing that resulted in the reversal of its May 2000 directive to the Decatur

10 plant that it could no longer produce its own skim belt stock," they only argue the exclusion

11 of one specific document: minutes from a Products Process Review (PPR) meeting at the

12 Decatur plant on July 18, 2000 (Doc. 283 at 1).  Though it appears relevant, the document

13 is inadmissible hearsay and not excepted by the Federal Rules of Evidence, in particular Rule

14 803(6).

15        A hearsay document satisfies Rule 803(6) when: (1) "made at or near the time;" (2)

16 "by, or from information transmitted by, a person with knowledge;" (3) "if kept in the course

17 of a regularly conducted business activity, and;" (4) " if it was the regular practice of that

18 business activity to make" the document.  Fed. R. Evid. 803(6).  The name of Defendant

19 Firestone employee George Ursick, Manager of Strategic Planning for the Tire Development

20 Division from 1994-2000, appears on the document and Mr. Ursick claims authorship (Doc.

21 350 Ex. H at 92/22-23; Ex. G at 2).  In his deposition, Mr. Ursick stated that his duties

22 included regularly visiting Firestone Defendants' various tire production facilities, convening

23 Products Process Review meetings, and recording minutes from the meetings (Doc. 350 Ex.

24 H at 15/7-16/1, 94/24-95/13).  Plaintiffs claim that Mr. Ursick did not attend the July 18,

25 2000 meeting because he testified in his deposition to not visiting the Decatur facility during

26 the entire year of 2000 and cannot recall actually attending the meeting (Doc. 350 Ex. H

27 15/10-15, 16/10-12, 94/21-23).  Assuming, however, Mr. Ursick did personally attend and

28

1   report on the July 2000 meeting, the Rule 803(6) exception might apply to the document in
2   a broad sense if he can lay the foundation at trial.

3       However, the document contains within it hearsay statements which are inadmissible.
4   The critical portion of the document reports:

> "Much presentation material and discussion on Decatur steel skim issue. Both tire
> test and lab test comparisons do not indicate significant differences between Wilson
> and Decatur. J5757 superior to J2757 and ATC recommendation is that Decatur go
> back to their own mixed J5757 skim/wedge using August shutdown week as a marker
> to cut off Wilson." (Doc. 350 Ex. G at 1).

9   While Mr. Ursick most likely witnessed this information and related it in the minutes close
10  in time to and during the course of a regularly conducted business meeting, neither Mr.
11  Ursick nor any Defendant knows the identity of the presenters and original declarants.
12  Plaintiffs argue that, because the original declarants are unidentified, statements within the
13  document do not satisfy the second, knowledge requirement of Rule 803(6). The Court
14  agrees. Defendants argue that the Court should infer the identity and knowledge of these
15  unidentified declarants, who were likely "Bridgestone Firestone's Compound Development
16  employees acting in the course of their employment with knowledge of the subject matter at
17  issue" (Doc. 350 at 7). Some Courts have inferred knowledge upon unknown declarants
18  whose statements are recorded in admissible hearsay business records. See e.g. Saks Int'l,
19  Inc. v. M/V Export Champion, 817 F.2d 1011, 1013-14 (2d Cir. 1987) (inferring sufficient
20  knowledge on unidentified stevedores who wrote business record tallying cargo on a
21  transport ship); Onujiogu v. U.S., 817 F.2d 3, 5 (1st Cir. 1987) (inferring that hospital record
22  was based on statements of husband/witness, even though neither the record nor its author
23  were able to identify the husband/witness as declarant). However, to reach Defendants'
24  desired result would require too many assumptions. First, the Court must assume that Mr.
25  Ursick actually attended the July 2000 meeting; second, that the recorded statements came
26  from Defendant Firestone's compound development employees; and finally, that these
27  employees had personal knowledge of the testing and other facts mentioned in the document

28

1   (including the hearsay of Akron Technical Center's recommendation). The document lacks

2   " trustworthiness" and is not admissible. Fed. R. Evid. 803(6).

3

4   **Motion In Limine To Exclude Evidence Relating To Dissimilar Tires, Accidents, and
    Litigation (Doc. 284)**

5
    **Firestone's motion is granted in part and denied in part.**
6

7   Defendants seek to exclude all evidence on the following topics:

8   " 1. Evidence of dissimilar tires to the Bridgestone Dueler APT II P235/75R15 105S

9       tire at issue;

10  "2. Evidence of dissimilar accidents to the circumstances of the accident at issue;

11

12  "3. 'Backdoor offers' of evidence of dissimilar tires and dissimilar accidents;

13  "4. Foreign Tires and accidents;

14
    "5. References to Goodyear tires on Ford/Mercury vehicles; and
15

16  "6. Depositions from other cases involving different tires" (Doc. 284 at 2).

17
    Because Plaintiffs' do not respond to items (4) and (5), all evidence pertaining to
18
    foreign tires and accidents and references to the use of Goodyear tires on Ford or Mercury
19
    Vehicles, not otherwise allowed by this opinion, will be excluded. However, Defendants'
20
    motion with respect to items (1)-(3) is denied and further submissions from Plaintiffs
21
    concerning item (6) will be required on Tuesday, January 20, 2009.
22
    With respect to dissimilar tires (1), evidence concerning such tires will be admitted
23
    if the tires are "substantially similar" to the accident tire, specifically if they share the same
24
    alleged defective component as the accident tire. See Gonzalez v. Cont'l Tire N. Am., Inc.,
25
    2005 WL 5978045, *4 (D. Ariz. 2005) ("Plaintiffs meet the 'substantially similar'
26
    requirement" when evidence from other accidents or tires "speak[s] to the same common
27
    danger of tread separation."). Here, Plaintiffs claim certain other tires are relevant because
28

they share the same defective component, that is belt skim stock, and were produced at Defendant's Decatur facility during the same time period as Plaintiff's tire, and were/are all subject to similar increased incidence of tread separation.  Under these circumstances, Plaintiffs' proposed tire evidence is relevant.  The Court acknowledges, though, Defendants' position that "[n]ot all tires designed and manufactured by Firestone are substantially similar" (Doc. 284 at 4).  As such, Defendants may attempt to rebut Plaintiffs' showing of substantial similarity with admissible evidence such that the unique design of dissimilar tires affects the *alleged defective component* in a manner that the dissimilar tire would not react the same as Plaintiff's tire during the accident.  Thus far, Defendants have not persuaded the Court that such would occur with dissimilar tires.

With respect to evidence of dissimilar accidents (2), Plaintiffs only seek to admit such evidence in response to factual allegations linked to Defendants' claims of contributory negligence, that is: (A) all tire failures are similar and drivers should be able to control their vehicles during such events, and (B) tread separations are rare events and a motorist's inability to control the vehicle during a tread separation is an even rarer event (Doc. 344 at 14).  The evidence is relevant in this context and is permissible for this purpose.

Concerning item (3), Plaintiffs may cross examine Defendants' experts on the subjects of dissimilar tires and accidents to probe the experts' qualifications and biases (Doc. 344 at 15).  Plaintiffs may not use the term "tread separation accidents" during cross examination, because it is too prejudicial.

Decision on item (6) is reversed, pending Plaintiffs' submission of additional documentation showing that the prior deposition testimony of witnesses McMillan, Mockitis, and Wyant fall squarely within the claimed hearsay exceptions, under Federal Rules of Evidence 801(d)(2) or 804(b)(1) (Doc. 344 at 15-16).  Such information will include: the excerpts of each witness' testimony and how each excerpt is non-hearsay or hearsay excepted.

**Motion In Limine To Exclude Evidence Relating To the TREAD Act and FMVSS 139 (Doc. 285)**

     **The motion is granted.**

     Firestone is correct that the contested regulations predate the manufacture of Plaintiff's accident tire.  However, Arizona strict products liability law allows a jury to apply a "hindsight" analysis: "The quality of the product may be measured not only by the information available to the manufacturer at the time of design, but also by the information available to the trier of fact at the time of trial."  Dart v. Wiebe Mfg., Inc., 709 P.2d 876, 881 (Ariz. 1985).  Defendants intend to argue that their product was not unreasonably dangerous because it complied with then current federal regulations (Doc. 331).  Under Arizona law, Plaintiffs are allowed to challenge this claim by showing that the product, judged by current regulations, is unreasonably dangerous.  Nevertheless, the same standard of admissibility applies to current Federal Motor Vehicles Safety Standards as to previous versions of the Federal Motor Vehicle Safety Standards.  See supra Page 7.  Both Plaintiffs and Defendants have not established foundation to show the relevancy of these standards.

**Motion In Limine To Exclude Evidence Relating To Inadequate Warnings Or Failure To Recall  (Doc. 286)**

     Because Plaintiffs concede that they will not seek to admit any evidence contemplated in Defendants' motion, **Defendants' motion is denied as moot.**

**Motion In Limine To Exclude Evidence Regarding Tire Design and Manufacturing Unrelated To the Opinions Advanced By Plaintiffs' Expert (Doc. 289)**

     **Defendants' motion is granted in part and denied in part.**

     Plaintiffs offer evidence linking Defendant Firestone's C-95 corporate restructuring initiative with pressure on the Decatur manufacturing facility to cut costs and the facility's alleged subsequent decision to ignore an expensive safety directive, a decision which led to the production of defective tires and ultimately Plaintiff's accident (Doc. 343 at 1-3, Ex. 1).

This theory, however, rests on the assumption that "Mr. Ono's directive on cost," as cited in Plaintiffs' evidentiary submission, is in fact the same as Defendant Firestone's C-95 Program (Doc. 343 Ex. 1 at 1).  If "Mr. Ono's directive on cost" and the C-95 Program are the same, Plaintiffs may offer evidence concerning the C-95 Program.  If "Mr. Ono's directive on cost" and the C-95 Program are not the same, Plaintiffs are precluded from presenting evidence on the C-95 Program.

Defendants have correctly cited the applicable rule on subsequent remedial measures.  See Readenour v. Marion Power Shovel, a Div. of Dresser Indus., Inc., 719 P.2d 1058, 1062 (Ariz.1986) ("Construing the statute [A.R.S. § 12-686] and rule [Fed. R. Evid. 407] together, whether post-sale or post-accident, design changes or remedial measures are inadmissible except to the extent permitted by Rule 407"); A.R.S. § 12-687(3) (prohibiting product safety analyses or reviews and corresponding remedial measures from use as evidence of punitive damages).  However, Defendants point to no particular evidence they seek to exclude.  Plaintiffs claim that all of their proffered evidence is relevant and is either not covered by the rules or fits into an exception (Doc. 343 at 3-6).  Without reference to specific evidence, the Court cannot apply the above rules (or conduct a relevancy/prejudice analysis).  This portion of Defendants' motion is denied.

**Motion In Limine To Exclude Evidence Relating To Government Investigations, Congressional Hearings and Recall Programs (Doc. 290)**

**Motion is granted in part and denied in part.**

Firestone Defendants seek to exclude all evidence concerning "governmental proceedings and recall programs relating to Radial ATX, ATX II, Wilderness AT, and Firestone 500 tires," specifically respecting

"1. Congressional hearings and government investigations;

"2. National Highway Traffic and Safety Administration proceedings and reports;

"3. Firestone's voluntary recall and replacement program; and

"4 Grand Jury proceedings" (Doc. 290 at 2).

Plaintiffs respond that testimony given by Defendant Firestone employees at Congressional hearings or Grand Jury proceedings will not be offered, except to impeach inconsistent statements made by Firestone witnesses.  Defendants' motion, respecting items (1) and (4), is denied as moot.

Concerning item (3), Defendants argue that evidence of Firestone's voluntary recall and replacement programs is inadmissible as a subsequent remedial measure.  See Fed. R. Evid. 407; A.R.S. §§ 12-686, 12-687.  Even if these programs are not subsequent remedial measures, the probative value of referencing the recall or replacement programs is greatly outweighed by its potential for prejudice.  See Fed. R. Evid. 403.  Because Plaintiffs do not pointedly respond to this issue, Defendants' motion with respect to item (3) is granted.

The Court agrees with Plaintiffs, regarding item (2), that documents and reports from the National Highway Traffic and Safety Administration (NHTSA) concerning the recalled tires appear relevant and will not implicate a subsequent remedial measure as long as they are redacted to exclude direct references to Firestone's recall and replacement programs. Such documents and reports, as well as other evidence, elicited during NHTSA's investigation will likely be relevant to the existence of the alleged defect and Firestone's prior knowledge of that defect.  But some of this evidence may be hearsay, irrelevant, overly prejudicial, improper expert testimony, and as such will be excluded.  Such ruling is premature because neither party has identified specific evidence which Plaintiffs seek to admit and to which Defendants object.  Defendants' motion is at this time denied on this issue.  The Court notes that Exhibits 1 and 2, attached to Plaintiffs' response, appear to be inadmissible hearsay and the Court lacks sufficient information to judge the admissibility of the remaining attached exhibits (Doc. 345 Ex. 1-5).

1    **Defendants' Omnibus Motion In Limine (Doc. 291)**

2         **Motion will be granted in part and denied in part.**

3
4         The Court agrees with Defendants that evidence concerning Defendants' liability
5    insurance or offer to settle Plaintiffs' claim is off-limits.  See Fed. R. Evid. 408, 411.  The
6    Court also agrees that the examples in Defendants' motion of commentary about Defense
7    counsel and so-called "outrageous commentary" are improper (Doc. 291 at 6-7, 9).  The
8    experience of all counsel gives the Court comfort that they will avoid ignoble presentations
9    in court, such as those described as "outrageous commentary."  Irrelevant and prejudicial
10   references to Plaintiffs' plans for lawsuit proceeds or Plaintiffs' motives for initiating this
11   action are also precluded.  Any reference or argument to the jury concerning motions,
12   pleadings, discovery disputes, alleged discovery misconduct or other court documents is
13   similarly irrelevant and prejudicial and is excluded.  Furthermore, media and consumer
14   interest or public interest reports are generally hearsay and excluded, unless Plaintiffs prove,
15   outside the presence of the jury, that the evidence is not hearsay or falls within an exception.

16        Appropriate reference to industry ethical standards is allowed, as such standards could
17   be relevant on the question of punitive damages and duty of care.  References to Firestone
18   Defendants' Japanese parent company and Japanese employees are also permitted.  The mere
19   mention of a Japanese corporation or employees is unlikely to produce prejudice.  The Court
20   will only intervene to preclude such references if Plaintiffs are clearly using Defendants'
21   Japanese parent corporation or Japanese employees to show the magnitude of the Firestone
22   Corporation or for other improper objectives.

23        Lastly, evidence concerning facility conditions at Firestone Defendants' Decatur,
24   Illinois manufacturing plant is allowed.  Defendants have not fully explained what tire expert
25   Robert Ochs did not timely disclose in his opinion about how physical plant conditions
26   contributed to the manufacture of defective tires.  Because failure to timely disclose is
27   unclear, exclusion is inappropriate at this time.  Decision on the fairness and

28

representativeness of Plaintiffs' photographs and video footage is reserved until the evidence is examined by the Court.

**Motion In Limine Re Chart and Internal Documents That Were Not Timely Disclosed (Doc. 295)**

  **Plaintiffs' motion is granted.**

  The documents are relevant if they tend to prove what Defendants claim, but their late disclosure and hearsay nature require exclusion.

  The Court ordered the parties to supplement all discovery, including identification of exhibits and witnesses to be used at trial, pursuant to Federal Rule of Civil Procedure 26(a)(3), by March 3, 2008. (Doc. 306 at 3). Firestone Defendants disclosed the contested documents and accompanying affidavits, all of which they intend to use at trial, in June 2008 (Doc. 295 at Ex. 1-3).

  Defendants first argue that they were not required to disclose these documents by March 2008 because Rule 26(e) does not require such disclosure. This is incorrect. Rule 26(a)(3)(A)(iii) and the Court's Order specifically state that all evidence to be presented at trial must be disclosed by a certain deadline but this Rule is independent of discovery deadlines. Rule 26(e) applies to all discovery and is strictly construed against those who disregard it. Compliance with Rule 26(a)(3)(A)(iii) is irrelevant. Defendants next argue that justice requires the Court to ignore the Rule 16 Scheduling Order to accommodate their late disclosure. The late disclosure of vital evidence in this case that would initiate substantial responsive discovery cannot be allowed. Plaintiffs did not see the actual documents until June, well after the deadline for discovery (Doc. 351 Ex. F at 140/23-141/23). Thus, Plaintiffs' ability to clarify questions or resolve problems with the documents, through additional discovery, passed. Defendants also claim Plaintiffs could have asked for additional discovery after the deadline, but Plaintiffs had no reason to request an extension of discovery when they rightly assumed that the Court would deny it. Lastly, Defendants

claim Plaintiffs waived their right to enforce the Court's March 2008 discovery deadline because Plaintiffs themselves disclosed late documents, but as always, two wrongs do not make a right.

Moreover, the disputed documents are most likely hearsay.  Defendants argue the documents were maintained in the regular course of business and fit within the Rule 803(6) hearsay exception.  But the characteristics of the documents suggest a lack of trustworthiness and Defendants have not established that they satisfy the business record hearsay exception. The only indication that the first document was even produced at the Decatur plant is an ambiguous hand-written title on the top of the document (Doc. 295 Ex. 2).  The second document has been significantly redacted and the record keeper's affidavit does not explain the scope or purpose of the redactions (Docs. 295 Ex. 3; 352 Ex. 2).  The documents are thus excluded.

Plaintiffs recently filed a motion for leave to file a companion objection and motion to strike concerning the two record keeper affidavits accompanying the disputed documents (Doc. 361).  Because the Court is excluding the two documents, Plaintiffs' motion is denied as moot.

**Motion In Limine To Exclude Reference To Sanjay Govindjee and W.J. Van Ooij and Their Opinions and/or Reports (Doc. 296)**

**Defendants' motion is denied in part and stayed for further review.**

Although Plaintiffs concede they will not reference any opinion or report of Sanjay Govindjee, they argue the relevance of the proffered study, and opinions contained therein, of W.J. Van Ooij.  Mr. Van Ooij, a materials engineer, was commissioned by the federal government to conduct a study which included a finding that belt skim stock produced at Firestone Defendants' Decatur facility was defective, causing the production of defective tires (Doc. 342 Ex. 1 at 18, 20).  As a materials engineer, Mr. Van Ooij is qualified to

conduct such analysis.  Plaintiffs claim the same defective component, produced at the same facility, was responsible for Plaintiff's tire failure and offer evidence to prove it.

But it is unclear whether Mr. Van Ooij's report should  have been disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2).  At the next Court appearance, Plaintiffs should be prepared to establish that Mr. Van Ooij's report was not required to be disclosed.  In any event, the report can be used for impeachment purposes and is possibly admissible under Federal Rule of Evidence 703.

**Motion In Limine To Exclude the Testimony of Robert Ochs (Doc. 303)**

       **Firestone's motion is denied.**

Firestone seeks to exclude the testimony of Plaintiffs' tire expert Robert Ochs for failing to meet the expert witness standard outlined in <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993).  Defendants first challenge the sufficiency of Mr. Ochs' design theory of tire failure.  In support, Defendants rely on the following facts:

(1) the accident tire design has an excellent field record;

(2) Mr. Ochs' analysis is based on an incorrect assumption that belt skim stock J2757 was used to manufacture the accident tire;

(3) Mr. Ochs neither identified any physical evidence supporting his theory nor performed independent chemical testing on the accident tire; and

(4) Mr. Ochs was unable to cite peer-reviewed scientific literature or industry standards identifying what degree of tire peel strength is necessary to adequately prevent tread and top belt separation (the cause of Plaintiff's tire failure) (Doc. 303 at 6-8).

Defendants also challenge Mr. Ochs' manufacture theory of tire failure.  In support, Defendants rely on the following facts:

(5) Mr. Ochs conducted no independent testing;

(6) Mr. Ochs provided no evidence that his theory applies to the accident tire;

(7) Mr. Ochs produced no science showing that use of the contaminated skim stock leads to tire failure;

(8) some published papers contradict Mr. Ochs' theory; and

(9) Mr. Ochs' opinion is internally inconsistent because it claims both design and manufacturing defect as the cause of Plaintiff's tire failure and accident (Doc. 303 at 10-11).

Regarding item (1), the Court agrees with Plaintiffs that the field record of the accident tire is irrelevant when judging the scientific basis of Mr. Ochs' expert testimony. Regarding item (2), Plaintiffs have argued and produced evidence that defective belt skim stock 2757 was used to manufacture the accident tire. This is a jury issue and the Court will not assume Defendants' version of the facts and disallow Mr. Ochs' testimony on Daubert grounds. Regarding items (3) and (5), Mr. Ochs is not required to conduct independent testing or firsthand inquiry to satisfy Daubert; he may rely on compiled data or other second-hand reports, if reliable. See Fed. R. Evid. 703 (facts or data "made known to the expert" may be a sufficient basis of expert testimony). Regarding items (4) and (7), Mr. Ochs is not required to cite or have knowledge of peer-reviewed scientific work. Expertise may take the form of practical knowledge based on experience, which Mr. Ochs has. See Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994) (allowing a longshoreman of thirty years to give expert testimony about his working conditions). Nor is Mr. Ochs required to cite or incorporate any particular source, datum, or fact, such as tire peel strength standards. As long as Mr. Ochs' sources are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," no more is required. Hudspeth v. Comm'r of Internal Revenue, 914 F.2d 1207, 1215 (9th Cir. 1990). Regarding item (6), Mr. Ochs cites sufficient evidence to support his manufacture theory of tire defect (Doc. 303 Ex. H). Regarding items (8) and (9), the Court agrees with Plaintiffs that questions of contradictory methodology and multiple possible causes of tire failure go to the

weight of the expert's testimony, not its admissibility.  See e.g. Jahn v. Equine Serv.'s, PSC, 233 F.3d 382, 390, 393 n.8 (6th Cir. 2000) (disputes as to the strength of the expert's opinion or existence of other possible causes of injury go to the weight of the testimony, not its admissibility).

**Motion In Limine To Exclude Reference To Miscellaneous Topics (Doc. 304)**

       **Defendants' motion is granted in part and denied in part.**

       Reference to the age of the Decatur, Illinois tire manufacturing facility is allowed only for impeachment during cross examination, as outlined by Plaintiffs.  With respect to the 1996 Decatur Task Force, the parties dispute whether the Task Force conclusively remedied the targeted quality-control problems at the Decatur facility.  The facts proffered by Defendants will not be assumed, that is, that the Task Force findings were irrelevant in 2000 because all of the targeted problems had been solved.  Thus, evidence concerning the Task Force is allowed.  The Court agrees with Defendants that the specter of prolonged labor unrest at the Decatur facility may improperly prejudice the jury, is irrelevant to any material dispute, and as such is not permitted, including any reference to the 1994 labor strike.  Any reference to the 2001 Decatur facility closing is also excluded, as Plaintiffs have not convinced the Court of any relevance between the closing and a material dispute in the case.  Lastly, Plaintiffs' argument that Decatur staff ignored a company directive to cease mixing belt skim stock at the Decatur facility is permitted, as this argument is supported by evidence and is one of the central theories of Plaintiffs' case.

**Motion In Limine Re Firestone's Dueler APT II Adjustment Data and Safety History (Doc. 294)**

       **Plaintiffs' motion is denied.**

       The issue is essentially a factual dispute, posing a question of weight and not admissibility. .  Defendants argue the data are reliable; Plaintiffs argue they are not.

1   Plaintiffs' attempt to frame the issue as a question of law is unavailing.  Plaintiffs cite two

2   non-binding cases for the proposition that a manufacturer cannot, as a matter of law, infer

3   a problem-free product by citing the lack of customer complaints.  <u>See</u> <u>Jones v. Pak-Mor</u>

4   <u>Mfg. Co.</u>, 700 P.2d 819, 824-25 (Ariz. 1985); <u>Forrest v. Beloit Corp.</u>, 424 F.3d 344, 355 (6th

5   Cir. 2005).  Plaintiffs, however, do not discuss  the exceptions to this rule.  Under Arizona

6   law, a manufacturer may infer superior product quality from the lack of customer complaints

7   if it has "a department or division to check on the safety of its products [or] a system for

8   ascertaining whether accidents have occurred from the use of its products." <u>Jones</u>, 700 P.2d

9   at 825.  The Sixth Circuit has recognized a similar exception.  Under Sixth Circuit Law, a

10  manufacturer-defendant may present a witness who testifies that "(a) a significant number

11  of substantially identical products have been used in similar circumstances over a period of

12  time; (b) the witness would likely be aware of prior accidents involving these products; and

13  (c) to the witness's knowledge, no such prior accidents have occurred." <u>Forrest</u>, 424 F.3d at

14  355.  According to Defendants' factual assertions, they would likely satisfy either standard

15  (Doc. 329 at 4-5).  Because Plaintiffs' motion turns on an unresolved factual dispute, it is

16  premature and will not be granted.

17          Plaintiffs' Motion For Leave To Supplement (Doc. 394) is also denied.  Although the

18  motion casts doubt on whether Defendants will be able to lay sufficient foundation to admit

19  the disputed data, it does not change the Court's ruling.

20          DATED this 16th day of January, 2009.

21

22

23

24

25

26

27

28                              _____
                                Roslyn O. Silver
                                United States District Judge